# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### Charlottesville Division

_____
)
John T. Nelson,                                         )
                                                        )
                 Plaintiff,                             )
v.                                                      )  Civil Action No. 311CV00014
                                                        )
Andrew H. Herrick                                       )
Albemarle County Attorney's Office                      )
401 McIntire Road, Suite 325                            )
Charlottesville, VA  22902                              )
                                                        )
Albemarle County Board of Social Services/              )
Albemarle County Department of Social Services          )
1600 5th Street Extended, Suite A                       )
Charlottesville, VA  22902,                             )
                                                        )
                 Defendants.                            )
_____)

## AMENDED COMPLAINT

Plaintiff John T. Nelson,[1] a father ("Mr. Nelson" or "Father"), submits this

Amended Complaint pursuant to 42 U. S. C. § 1983 to seek redress for Defendants'

violations, under color of state law, of his liberty interest in his relationship with his child

and to seek redress for Defendants' grossly negligent, bad faith and tortious misconduct.

In support thereof, he states as follows.

### INTRODUCTION

1.       Beginning in December of 2004, employees of the Albemarle County Board of

Social Services/Albemarle County Department of Social Services ("ACDSS" or

"Department"), acting pursuant to local policies and customs of the Department, did not

just botch an investigation into highly dubious allegations of child abuse, they abused

---

[1] Plaintiff has filed a Motion to Proceed Under Pseudonyms.

their official positions and the profound governmental powers afforded them to persecute a father and severely impair his relationship with his child. They falsely prejudged a father and purposely violated a court order of August 10, 2004, intended to protect the father and his child from a mother's history of misconduct and false allegations of abuse. Instead of protecting the father and child, they conspired with the mother to set up a "secret evaluation" behind the backs of the court and the child's *guardian ad litem* in a process that several tribunals have found to be untrue, "biased," "tainted," and "unprofessional," for the sole purpose of advancing the mother's agenda in a parallel custody/visitation case with Nelson.

2.      The Department and Herrick presented this false, biased, tainted and unprofessional evidence to courts and to administrative bodies, and each time the evidence was deemed unreliable and inadequate on which to base a finding or allegation of abuse by Mr. Nelson. Each judicial and administrative tribunal that reviewed the Department's evidence found the Mother to lack credibility and to be a suspect of abuse of the child.

3.      Despite numerous refutations of the Department's false, tainted and patently unreliable evidence in judicial and administrative forums, the Department and Herrick doubled down on the false evidence, even after they had no legal authority or reasonable factual basis for doing so, and actually facilitated the Mother's harmful conduct to the detriment of the child and her Father.

4.      Even after courts and/or administrative appeal officers held the Department's evidence to be patently unreliable, the Department, following local policies and customs, issued a completely unfounded level one administrative finding against the Father. They

continued to prohibit the Father from seeing his child even after he had been cleared of any wrongdoing by the Virginia Department of Social Services. Herrick and the Department continued to litigate against the Father long after they had no factual basis or legal authority for doing so.

5.     Moreover, the Department refused to revise its erroneous judgment about the Father, even after being confronted with compelling evidence and court and administrative findings refuting their earlier judgment.

6.     The Department intentionally ignored strong and compelling evidence that the Mother was the culprit. The Father presented the Department strong and compelling evidence that its evidence was false and the product of the Mother's misconduct and actual abuse of the child.

7.     Following policies and customs of the Department, the employees intentionally ignored clear evidence that their allegations of abuse were false and unreliable. They refused to investigate the child's Mother, even after four tribunals as well as medical and psychological professionals accused her of inherently harmful interference in the child's relationship with her father, harmful psychological therapies and treatment, interference with the child's psychological treatments, putting the child through traumatic and unnecessary medical procedures—all of which is defined as "abuse" under state law, regulations and guidelines. Despite repeated requests from the Father, they invoked Department policy in refusing to meet with him to learn the truth or even to consider evidence of his innocence and the Mother's abuse of the child.

8.     The Department and its employees also ignored clear markers of coaching and false allegations by the mother and refused to meet with Plaintiff to consider evidence of

such harmful actions. These markers started as early as August 2003, with the Mother's production of a transcript of a tape-recording of her conversation with the then-two year old child. The transcript revealed the Mother's attempts to coach the child into making a false disclosure of abuse.

9.     So obvious was the Mother's misconduct that the Albemarle County Juvenile & Domestic Relations Court told the Department and Herrick that the Mother might be the abuser and named the Mother as a respondent to a Protective Order. Later, the Virginia Department of Social Services told the local Department that the Mother lacked credibility and was vindictive. The Virginia Court of Appeals ruled that it was the Department's and the Albemarle County Circuit Court's responsibility to determine "which parent" abused the child, clearly implicating the Mother as a potential abuser deserving scrutiny. Finally, the Albemarle County Circuit Court found the Father to be completely innocent, and found the Mother to lack credibility and to have engaged in an "extreme" and prolonged pattern of interference with the child's relationship with her Father by making false allegations of abuse over a period of years.

10.     Faced with all of these judicial and administrative directives, the Department and Herrick became partisans of the Mother and her attorney. They protected the Mother from any scrutiny and refused to protect the child from the well-articulated suspicions that the Mother abused the child.

11.     Defendant's employees moved from ignoring the mother's pathological misconduct to actually facilitating it. In late 2004, the employees, in conformance with Department policy, but in violation of a court order, worked with the mother to shop the child to an unqualified and biased therapist in Newport News. They then subjected the

4

child to an unprofessional evaluation and traumatized the barely four-year-old child into making a false disclosure of abuse against her will.

12.    The Department's employees also knowingly permitted the mother to isolate herself and the child in hotel rooms in Newport News before each so-called "evaluation" visit even though a Custody Order dated August 10, 2004 prohibited the mother from further attempts to manipulate the child.

13.    They violated state laws and court orders and aided and abetted the mother's violation of court orders on numerous occasions, contrary to the child's best interest.

14.    However, so flawed was the Department's forced "disclosure" that the Juvenile & Domestic Relations Court found it "tainted" and unreliable in February 2005.  The "disclosure" was so dubious that the JDR Court concluded the mother was a suspect of abuse for coaching the child, named her as a respondent to the Defendant Department's Petition, and issued a Protective Order prohibiting her from manipulative conduct with respect to the child.

15.    Even after the JDR Court found the Department's evidence to be "tainted" and unreliable, and concluded that the mother was a suspect of abuse, the Department proceeded to issue administrative findings of abuse solely against the father, based on the "tainted," unreliable evidence.

16.    The Department gave no consideration to the mother as a potential abuser, in part because it labored under a conflict of interest, having joined efforts with the mother.  The Department had a policy or custom of defining the coaching of a child to make a false disclosure of abuse, as well as the mother's other misconduct, as non-abusive.  This was

contrary to Virginia law and the JDR Court's legal rulings with respect to this child and this mother.

17.     Eventually, in July 2006, the Virginia Department of Social Services also rejected the Department's finding of abuse against Mr. Nelson and found the Department's evidence to be wholly unreliable.  The Virginia Department of Social Services concluded that the Department "did not even come close to proving its case by a preponderance of the evidence."  Echoing the JDR Court, the Virginia Department of Social Services also found that the mother lacked all credibility.  Herrick did everything he could to avoid the Virginia Department of Social Services' decision vindicating the Father.  Herrick even submitted perjured testimony of the Mother in an effort to argue for a long delay of any ruling by the Virginia Department of Social Services, in order to prolong the Department's ability to prohibit the Father from seeing his child (except 3 hours per week).  Fortunately, the Virginia Department of Social Services rejected the perjured testimony and Herrick's ploy.

18.     The Department and its attorney who prepared its Petition to the JDR Court, Mr. Herrick, ignored these and other judicial findings.  Even after these neutral tribunals rejected their tainted evidence and allegations, the Department remained recalcitrant, vindictively prohibiting the father from seeing his child at all times (except 3 hours per week), for several years.  This Department policy contradicted well-established policy of Virginia requiring local departments to maintain family integrity as the primary objective.  But even after a court ordered the child to see a therapist for the purposes of reuniting the father and daughter, the Department took no action to get the child to a therapist for that purpose.  Their efforts to prohibit the father from seeing his child at all times (except 3

hours per week) successfully prohibited the father from seeing his child until September of 2009. The prohibition they put into effect in 2005 continued in effect and prevented Mr. Nelson from seeing his child for over four and a half years. The resulting harm to the father-daughter relationship and to the father continues to this day, proximately caused by Defendants' actions.

19.     Later, in 2009, the Circuit Court of Albemarle County also found Defendants' tainted, forced "disclosure" to be so lacking in threshold indicia of reliability that the "disclosure" was excluded from evidence *in limine*, in the best interests of the child. The Court of Appeals of Virginia affirmed that *in limine* ruling.

20.     Not only did the Department and Herrick protect the Mother, but they commenced an effort to cover their own tracks, and to avoid any scrutiny of their own misconduct, in hopes that Mr. Nelson would not survive the harsh consequences of the Department's actions taken in conformance with local policies and customs as well as their abuse of governmental authority.

21.     Throughout this long saga, Mr. Nelson frequently requested the Department to appoint a neutral, objective child protection agency to review his case, but the Department blocked his efforts, in contravention of established state policy. The Department also opposed his frequent efforts to present evidence of his innocence. Even after the Albemarle County Circuit Court found Mr. Nelson to be wholly innocent of allegations of abuse, and found the Mother had been guilty of an "extreme" and prolonged campaign to interfere with the child's relationship with her Father, Herrick purposefully and intentionally blocked Mr. Nelson from a referral to another local office

for a neutral, objective investigation which would have revealed the misconduct of the Albemarle County Department of Social Services and its employees.

22.    Most importantly, the Department and its employees blocked Plaintiff from seeing his child at all times (except 3 hours per week) for almost five long and painful years with no reason for doing so.  They promised the JDR Court and Mr. Nelson to reunite him with his child upon resolution of their administrative findings before the Virginia Department of Social Services.  After the Virginia Department of Social Services cleared Plaintiff of any wrongdoing, they broke their promise and continued to prohibit him from seeing his child without any factual or legal basis for imposing such a severe prohibition against the Father.

23.    Even **after** the Virginia Department of Social Services ruled that Defendants had no basis for prosecuting Mr. Nelson for abuse of his child, thereby removing any legal or factual basis the Department or Herrick had for continuing legal process against Mr. Nelson, Defendant Andrew Herrick:

    a.    Worked with Department employees to continue prohibiting the Father from seeing his child at all times (except 3 hours per week), without any legal or factual basis for such a severe restriction;

    b.    Worked with the culprit, the Mother, and her attorney, to facilitate their malicious prosecution of the Father in an effort to continue an unjustified protective order against Mr. Nelson;

    c.    Knowingly maintained false allegations in the form of a discredited Petition and supporting false affidavits against the Father in a state

court proceeding, until March of 2009 when the Father convinced the Circuit Court to dismiss Herrick's Petition as baseless;

d. Introduced evidence in the Circuit Court that was prejudicial to the Father;

e. Opposed the Father's proffer of evidence of his actual innocence in the state court, opposition that was successful in the Circuit Court but later reversed by the Virginia Court of Appeals a year later; and

f. Opposed the Father's appeal from the Virginia Circuit Court to the Virginia Court of Appeals by filing a brief in opposition to the Father's request to lift a protective order so that he could restore his relationship with his child, opposition that was successful in prohibiting the Father from seeing his child for another two years until, on remand, the Circuit Court found the Father to be innocent and vacated the subject protective order;

g. Worked with the Department and its employees to deny the child a therapist who would reunite the child with her Father as contemplated by the Albemarle County Circuit Court;

h. Thereafter, blocked the Father from meeting with the Department to present an allegation and evidence that the Mother had abused the child and blocked the Father from a referral to another local department for an objective investigation or assessment of his allegations.

24.     As of July 2006, Herrick knew that the official position of the Commonwealth of Virginia and the local Department was that the Father was not established to have abused his child and therefore was wholly innocent in the eyes of the law.  In February 2009, Herrick was forced to admit that he and the Department had no factual or legal basis for maintaining their Petition against Mr. Nelson since July 2006.

25.     From July 2006 forward, Herrick and other Department employees had an affirmative duty to acknowledge Mr. Nelson's innocence and to take steps to reunite Mr. Nelson to his child in order to repair the damage they had inflicted upon this family. Instead, Herrick and the Department did everything possible to perpetuate the damage they had instigated.

26.     Herrick's conduct was *ultra vires* and malicious and undertaken without any legitimate factual basis or legal authority.

27.     Mr. Nelson comes to this Court fully vindicated by the Virginia Department of Social Services, the Circuit Court of Albemarle County, and the Virginia Court of Appeals.

28.     In July 2006, the Virginia Department of Social Services ruled in July 2006 that Mr. Nelson was innocent and that the Department's allegations did not even rise to a close case.

29.     On September 16, 2009, the Circuit Court of Albemarle County (Higgins, J.) held that Plaintiff was innocent and that he was the victim of an obsessive and unreasonable campaign by the child's mother to interfere with the father-child relationship.  The Circuit Court of Albemarle County also held that the evidence of abuse manufactured by the Defendant Department so lacked fundamental indicia of reliability that it was not

even admissible. The Virginia Court of Appeals has affirmed the Circuit Court's ruling in early 2011.

30. The Virginia Board of Social Work has reprimanded and punished the social worker procured by the Department for her professional misconduct vis-à-vis Mr. Nelson and his child.

31. Thus, Plaintiff now comes to this Court as the undisputed innocent victim of inadequate Department policies and customs, gross mistakes, intentional misconduct and reckless false accusations by government officials and the unqualified social worker they procured and directed.

32. Three matters are not in dispute: (a) Defendants accused an innocent man of child abuse and maintained that false accusation in court long after they had no basis for doing so; (b) for a period of more than four and a half years, their false accusation caused profound and irreparable harm in the lives of a father and his daughter, which harm will continue into the future; and (c) the harm they caused to a father's relationship with his child violated the well-established constitutional right to familial relationships.

33. This lawsuit seeks to hold the Albemarle County Board of Social Work/Albemarle County Department of Social Services ("Department") and an Albemarle County attorney, Andrew Herrick ("Herrick"), legally responsible for the harm they inflicted upon an innocent father and his relationship with his daughter.

## JURISDICTION & VENUE

34. This case arises under the United States Constitution and the laws of the United States and presents a federal question within this Court's jurisdiction under Article III of the Constitution and 28 U.S.C. § 1331 and 28 U.S.C. § 1343(3). This action is brought

pursuant to 42 U.S.C. § 1983 as an action to redress the deprivation under color of state law of rights secured by the United States Constitution.

35.     The Court has jurisdiction over tort claims arising under state law pursuant to 28 U.S.C. § 1367(a) because the claims are so related to the federal constitutional claims that they form part of the same case or controversy.

36.     The Court has authority to award costs and attorneys' fees pursuant to 28 U.S.C. § 1988.

37.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## THE PLAINTIFF

38.     Plaintiff John T. Nelson resides in Nelson County, Virginia.  Mr. Nelson is the father of Sarah Nelson, a 10-year-old girl, who resides with her mother in the City of Charlottesville.  Mr. Nelson shares joint legal custody of the child with the child's mother.  He has been engaged in his child's life since birth and has supported her financially at all times.  It is well-established that until December of 2004, when the Department, its employees, and its attorney, intervened in the relationship, Mr. Nelson and his daughter enjoyed an excellent and loving relationship.

## THE DEFENDANTS

39.     The Department's employees are employed by the local governing body.  The Department's employees are paid from local funds.  On information and belief, the Department's liability will be paid by local funds and/or private insurance procured with local funds.  The Department was responsible for the local policies and customs, which failed to conform with state policies and/or violated state policies, that guided an investigation of child abuse allegations against Mr. Nelson from December of 2004 until

July 14, 2006, when an administrative decision by the Commonwealth of Virginia Department of Social Services dismissed Defendants' erroneous findings and allegations. The Department's local policies and customs and its employees' conduct in implementing those policies and customs continued to play a role in prohibiting Mr. Nelson from seeing his daughter after July 14, 2006, until September 2009.

40.     Defendant Albemarle County Department of Social Services is the government agency that was responsible for the policies and customs implemented by its employees in violation of Plaintiff's constitutional rights.  ACDSS is sued solely pursuant to 42 U.S.C. §§ 1983 and 1988 under Count I.

41.      Defendant Andrew H. Herrick is an attorney in the Albemarle County Attorney's office.  Mr. Herrick prosecuted Plaintiff for child abuse in the state court and before the Virginia Department of Social Services.  He signed a court Petition making false allegations that Plaintiff sexually abused his child and maintained that Petition in court even after the JDR Court found, in February 2005, the evidence on which the Petition was based to be "tainted" and unreliable.  **After** the Virginia Department of Social Services determined, on July 14, 2006, that Albemarle County had no basis for accusing Plaintiff of child abuse, Herrick continued to maintain the Petition making the same allegations against Plaintiff, and Herrick affirmatively litigated against Plaintiff by opposing Plaintiff's efforts to present evidence of his innocence in state court until March 3, 2009.  Herrick admitted that he had no basis for making those allegations against Mr. Nelson in or about February 2009, based on the decision by the Virginia Department of Social Services in July of 2006.  The Circuit Court of Albemarle County then dismissed Herrick's baseless petition and allegations on March 3, 2009.  The Circuit Court

expressly reserved judgment on Herrick's conduct and liability, noting in its March 3, 2009 Order that "Alleged wrongdoing by Social Services [Department] was not determined by this Court." Herrick is sued in his personal and official capacities.

## FACTUAL ALLEGATIONS

42.    The acts constituting the basis for the causes of action asserted herein began in December 2004 and continued for more than four years, through the Circuit Court of Albemarle County's dismissal of the Albemarle County Department of Social Services and Defendant Herrick's baseless Petition on March 3, 2009. The severe restrictions Defendant Albemarle County Department of Social Services imposed on Mr. Nelson's relationship with his child continued until September 2009, and the Defendant was the proximate cause of the continuation of those restrictions from early 2005 until the Fall of 2009. The harm Defendants inflicted upon Mr. Nelson and upon his relationship with his child is continuing and will continue for a lifetime.

43.    From December 2004 to early 2005, Defendant Department's employees acted individually and/or in concert to procure an unprofessional and unreliable "forensic evaluation" of the child to serve as the basis for bringing charges of child abuse against Plaintiff. Defendant's employees acted individually and/or in concert to subject Plaintiff to false charges of child abuse, knowing that such charges were false and/or with reckless disregard for their truth or falsity. They maintained such charges after several state tribunals ruled the charges to be false, unreliable and without merit.

44.    Defendant's employees violated a Custody Order issued by the Albemarle County Juvenile & Domestic Relations Court (Berry, J.) dated August 10, 2004, by taking the child to see an unqualified social worker over the objection of the child's court-appointed

therapist. The JDR Court's Custody Order expressly required Defendant to obtain the court-appointed therapist's express prior approval before taking the child to see additional therapists. The JDR Court imposed this requirement because the mother had shopped the child to numerous professionals in search of an opinion supporting her abuse allegations. The JDR Custody Court's Custody Order was intended to protect the child from further harmful exposure to numerous therapists selected by the mother. The JDR Court's Custody Order also was intended to protect the father, Plaintiff here, from continuing allegations that might result from exposure to unreliable therapists selected by the mother. In December 2004, the mother and her out-of-state attorney, Richard Ducote, arranged for the child to be taken to social worker Viola Vaughan-Eden in Newport News, Virginia, a social worker who worked with Ducote in other cases. The court-appointed therapist, Wendy Carroll, expressly objected to the mother's proposal to take the child to Vaughan-Eden, but Defendant's employee Lori Green took the child to see Vaughan-Eden anyway, without Wendy Carroll's knowledge.

45.     Because of past evidence of coaching and attempted manipulation by the mother, the August 10, 2004 Custody Order specifically required a member or designee of the Albemarle County Department of Social Services to accompany the child on all future sessions approved by the court's designated therapist. In addition to circumventing the Custody Order requiring approval of such therapist, Defendant's employees let the mother stay unaccompanied with the child in hotel rooms for crammed multiple-day sessions designed to get the desired "disclosure." In February 2005, Defendant's employee Lori Green was compelled to apologize to the JD&R Court for her violations of the Custody Order intended to protect the child and the father from such misconduct.

However, that apology did not change Defendant Department's pattern of persecuting Plaintiff wherever possible.

46.     Vaughan-Eden was paid approximately $15,000 by the mother to render a bogus opinion against Plaintiff.  Vaughan-Eden has testified on several occasions that she did not begin from a neutral viewpoint but assumed the mother to be the "non-offending parent" and the father to be the "offending party."  Defendant's employee Green and the mother gave Vaughan-Eden false and prejudicial information about Plaintiff at the inception of the child's sessions.  Green and other Department employees went so far as to purposely withhold the child's extensive case history from Vaughan-Eden before she saw the child.  In order to prejudice the father, Green also instructed Vaughan-Eden not to collect or consider collateral information about Plaintiff or the mother's dubious history, in violation of critically important professional standards that have direct bearing upon the reliability of the forensic and therapeutic process and results.

47.     Defendant Department thereby procured an evaluation of the child under circumstances which it knew would render a false and unreliable result and/or with reckless disregard for the truth or reliability of the evaluation and result.

48.     The Department and Green failed to audio-tape or video-tape the traumatic session with the child, in violation of state law.

49.     The Department even subjected the child to trauma and abuse in the evaluation process, subjecting the child to an approximately 85-minute marathon interrogation session without a break.

50.     Vaughan-Eden even instructed the child to disclose sexual abuse to Defendant Department's case worker, Lori Green.  The child resisted for about 45 minutes.  Finally, the traumatized child complied with Vaughan-Eden's instruction.

51.     The Department violated well-established professional standards and protocols established for child forensic therapy and sessions.  In fact, not only did the Department select an unqualified "therapist" in Vaughn-Eden, who was not sufficiently trained in the Huntsville Model of child forensic therapy she purported to employ, but the Department explicitly instructed Vaughn-Eden to violate the Huntsville Model and other well-established procedures.

52.     This is how the Defendant Department procured a patently flawed and unreliable "forensic evaluation" of the child in violation of state regulations, specific court orders related to the child, and well-established professional standards.  The Department's violations of professional standards directly undermined the evaluation's reliability.

53.     The Department and its attorney Herrick then accused Plaintiff of child sexual abuse based upon this deeply flawed evaluation.  Defendants used the evaluation knowing that the child's forced statements were patently unreliable and/or with reckless disregard for the truth or reliability of the forced statements.

54.      At several times before and after procuring the false evaluation, Defendants were presented clear evidence of its false nature, and specifically the mother's obsession with making and manufacturing false allegations and coaching of the child, which they ignored intentionally and/or with gross negligence.  Defendants were presented numerous credible and express refutations of the "forensic evaluation."  They ignored these refutations intentionally and/or with gross negligence.  Defendants ignored the ruling of

the JDR Court which concluded the evaluation was "tainted" and inadequate to support a finding that Plaintiff had abused his child.

55.     Notwithstanding the JDR Court's ruling, Defendant Department proceeded to render an administrative "founded" disposition against Plaintiff on the basis of the false, unreliable and "tainted" evaluation.  The "founded" disposition was a Level 1 administrative finding, the most serious finding that the Department can make against a parent.

56.     The Department subsequently ignored key evidence to uphold the bogus finding of its employees.

57.     The Department's finding was later reversed by the Virginia Department of Social Services on evidence it found "was not even close," including the seriously flawed work of Vaughan-Eden and the word of a mother who was found to "lack credibility" and to be "vindictive," yet she was nonetheless facilitated at every turn and protected by the Defendant Department and by Herrick.

58.     In July 2006, a neutral hearing officer overturned the "founded" disposition, ruling that the evaluation of the child was deeply flawed and unreliable due in part to actions taken by Defendants and further that Defendants "did not even come close to proving [their] case by a preponderance of the evidence."  This decision by the hearing officer represented the second time the allegation of child abuse had been presented to a judicial or quasi-judicial official for consideration on the merits, and the second time that the evaluation was found to be flawed and unreliable.

59.     Notwithstanding official vindication by the Commonwealth of Virginia, Defendant Department and Herrick intentionally refused to dismiss or revise their false allegations of abuse in the Circuit Court of Albemarle.

60.     Likewise, the Department refused to revise the restrictions it had imposed on Mr. Nelson's visitation with his child.  The Department continued to prohibit him from seeing his child at all times (except for a maximum of three hours per week, supervised) without any basis for such a severe restriction on Plaintiff's rights and in violation of established state policy requiring local departments to maintain family integrity as the ultimate objective of child protective services.

61.     The "founded" disposition was absolutely false.  At no time did Mr. Nelson ever abuse his child in any way.  This is the conclusion of the Circuit Court of Albemarle County and the Virginia Department of Social Services.  The Court of Appeals of Virginia recently affirmed in part and reversed in part the decision of the Albemarle County Circuit Court, and the Court of Appeals' decision did not call into question the core finding that the father is innocent of the Defendants' abuse allegations.

62.     The Department, through its attorney Herrick, belatedly – not until February 19, 2009 – admitted that the Department had no basis for disputing Mr. Nelson's innocence since July 2006.  But the Department and Herrick had nonetheless maintained a baseless Petition against the father and litigated against him.

63.     Under Virginia law, a "founded" disposition of child abuse carries with it great and heavy burdens on the liberty of the person and on the family of the person who is the subject of the finding.  The person and the child are stigmatized in a way that permanently interferes with their familial relationship in public and private quarters.  The

person's name is placed on a central registry of abusers. The "founded" disposition may form the basis for severe punishment of the individual and governmental interference in his relationship with his child. In this case, Defendant Department based severe prohibitions against the father's visitation with his child (he was prohibited from seeing his child at all times, except 3 hours or less of supervised time each week for several years) upon their false "founded" disposition.

64. Further, Defendant Department affirmatively stigmatized Plaintiff with its "founded" disposition, invoking it to: (a) prejudice court proceedings against Mr. Nelson, (b) prejudice Mr. Nelson with the child's CASA advocates, (c) prejudice Mr. Nelson with the child's daycare provider where he was an active participant, (d) prejudice Mr. Nelson with the child's school where the child's teacher and administrators learned of Defendant Department's finding (with the intended effect of restricting Mr. Nelson's role in the child's educational activities), (e) justify Defendant Department's refusal to enforce court-issued protective orders against the mother, (f) assist the mother in furthering her newfound career as a "child abuse" advocate, and (g) prejudice Mr. Nelson with professional evaluators, who were appointed in subsequent judicial proceedings, in order to taint their view of Mr. Nelson before they conducted their independent assessments.

65. Defendants' actions caused Plaintiff to suffer great emotional harm and damage to his relationship with his child, including loss of precious time with his child during an important period of her life. His bond with his child was deeply damaged. He also was forced to incur attorneys' fees and other expenses in his effort to continue opposing the

false allegations in the Circuit Court, to restore his relationship with his child, and to address significant emotional pain and trauma for both himself and his child.

66. Many of the actions taken by the Defendant Department's employees were taken in conformity with formal or informal policies and customs that (a) were established locally by the local employees of the Albemarle County Department of Social Services and its Office of Child Protective Services and (b) did not conform with, or actually violated, state policies established by the Virginia Department of Social Services (i.e., wholly local policies or customs), including, but not limited to:

     a.     A local policy or custom of failing to train investigators and supervisors in proper child forensic procedures and methods;

     b.     A local policy or custom of ignoring or violating important protocols required by accepted standards of child forensic evaluations;

     c.     A local policy or custom of failing to tape investigational and forensic interviews with children in violation of state law and professional standards;

     d.     A local policy or custom of failing to take contemporaneous notes of interviews with children;

     e.     A local policy or custom of destroying contemporaneous notes of interviews with children;

     f.     A local policy or custom of selecting untrained, unqualified, incompetent social workers, and specifically Vaughan-Eden, to conduct negligent child forensic evaluations;

     g.     A local policy or custom of directing social workers to violate important protocols required by accepted standards of child forensic evaluation;

     h.     A local policy or custom of aiding and abetting a favored parent's violations of court-issued protective and custody orders;

     i.     A local policy or custom of refusing to enforce a favored parent's violations of court-issued protective and custody orders;

     j.     A local policy or custom of refusing to investigate or conduct a family assessment in cases where a parent (in this case the mother) is alleged to have harmed the

child emotionally, psychologically, physically and medically, specifically through the following means:  (i) obsessive and prolonged interference with a parent-child relationship, (ii) subjecting a child to multiple unnecessary sexual assault examinations, contrary to the advice of the child's pediatrician, and even lying to medical professionals to procure the intrusive examinations, (iii) repeated interference with the child's healthy therapeutic and psychological counseling relationships and sessions, (iv) shopping the child to multiple therapists, (v) coaching a child to make false allegations of sexual abuse, (vi) violations of court orders intended to protect the child's best interests, and (vii) a parent's accessing of online pornography and/or discussions of child pornography;

k.      A local policy or custom of defining "abuse" of a child to *exclude* credible reports and allegations of (i) obsessive and prolonged interference with a parent-child relationship, (ii) subjecting a child to multiple unnecessary sexual assault examinations, contrary to the advice of the child's pediatrician, and even lying to medical professionals to procure the intrusive examinations, (iii) repeated interference with the child's healthy therapeutic and psychological counseling relationships and sessions, (iv) shopping the child to multiple therapists, (v) coaching a child to make false allegations of sexual abuse, (vi) violations of court orders intended to protect the child's best interests, and (vii) a parent's accessing of online pornography and/or discussions of child pornography;

l.      A local policy or custom of refusing to process a new allegation/record of different kinds of abuse by an accused parent as a new, independent report of abuse entitled to an investigation and/or family assessment;

m.      A local policy or custom of refusing to meet with certain parents who have been "founded" in order to consider their evidence of innocence or their evidence of misconduct by ACDSS's favored parent;

n.      A local policy or custom of issuing "founded" dispositions based on evidence that a court previously has found to be unreliable;

o.      A local policy or custom of making "founded" administrative findings solely based on unreliable "disclosures" without regard to other relevant, collateral evidence;

p.      A local policy or custom of making "founded" administrative findings without any standards to determine a preponderance of the evidence;

q.      A policy or custom of refusing to revise a Level 1 "founded" disposition after the finding is challenged with credible, persuasive evidence;

r.      A local policy or custom of refusing to investigate ACDSS's favored parent alleged by third parties to have harmed a child when the allegations countermand their own findings about another parent;

s.      A local policy or custom of rubber stamping case workers' decisions without objectively and independently reviewing their conclusions and objective evidence

t.      A local policy or custom of prohibiting a parent from spending significant time with his/her child even after their administrative findings have been dismissed by the Virginia Department of Social Services and even though such visitation may be supervised;

u.      A local policy or custom of handling child abuse cases in situations where the ACDSS and its personnel have a conflict of interest;

v.      A local policy or custom of blocking a parent from obtaining a referral, as provided by state law when there is a conflict of interest, to a neutral, non-conflicted agency of another locality;

w.      A local policy or custom of implementing the Commonwealth's Differential Response System in a manner to protect ACDSS's favored parent against highly credible reports of abuse and/or dubious conduct that had direct relevance to Plaintiff's innocence;

x.      A local policy or custom of omitting risk assessments and/or omitting psychological assessments of both parents in risk assessments;

y.      A local policy or custom of not revising investigative findings and family assessments in light of new evidence and court and administrative rulings that directly contradict the Department's initial analysis and findings;

z.      A local policy or custom of destroying or otherwise deleting public records compiled in connection with ongoing abuse investigations and/or enforcement matters;

aa.      A local policy or custom to refuse to enforce court orders intended to protect children where they disagree with or dislike the court's rulings;

bb.      A local policy or custom of refusing to review the actions of employees or to consider evidence of employee misconduct or wrongdoing when making decisions in active cases;

cc.      A local policy or custom of deciding which parent to favor, and then tailoring their investigation, documentation, and findings to support that decision;

dd.      A local policy or custom of prohibiting a parent from visitation with a child in violation of state policy requiring maintenance of family integrity;

ee.     Other, similar local policies and customs that directly caused and contributed to Defendants' violations of Plaintiff's constitutional rights in this case.

67.     The Defendant Department's employees were implementing the aforesaid uniquely local policies and customs when they undertook the following harmful actions:

a.     Department employees intentionally violated ¶ 16 of the Custody Order, dated August 10, 2004 entered by the Albemarle County Juvenile & Domestic Relations Court ("the JDR Court'), by failing to inform or consult the court-appointed therapist, Wendy Carroll, before taking Mr. Nelson's child to Vaughan-Eden in Newport News, Virginia, for wholly unnecessary forensic evaluation.  In fact, court-appointed therapist Wendy Carroll had objected to a request to take the child to any other therapist for evaluation, but they took the child to Vaughan-Eden anyway, in violation of the JDR Court's explicit Custody Order.

b.     They intentionally violated ¶ 19 of the Custody Order, dated August 10, 2004 entered by the JDR Court, by failing to accompany Mr. Nelson's child on all visits to the forensic evaluator in Newport News.

c.     They selected a social worker who was unqualified and untrained to perform the kind of forensic evaluation she was chosen to perform.  They completely ignored Vaughan-Eden's lack of qualifications and training.  They blindly deferred to the child's mother's selection of Vaughan-Eden, who had a prior relationship with the mother's unscrupulous out-of-state attorney, and thereby abrogated their responsibilities to the child and to Plaintiff.

d.     Department employee Lori Green intentionally tainted and distorted the child's psychological evaluation by directing the evaluator to ignore all collateral information in the case except for certain prejudicial and false assertions about Plaintiff by Green and the child's vindictive mother.  Green knew that a comprehensive review of all collateral information was necessary to produce an accurate and reliable evaluation of the child.  Green has testified under oath that Vaughan-Eden did not collect collateral information and case history related to the child in accordance with the Huntsville Forensic Evaluation Model, the evaluation model Vaughan-Eden claimed to follow. Vaughan-Eden has testified under oath that she asked Green for all collateral information regarding the case history, which was required for a fair and accurate evaluation of the child set forth by The National Children's Advocacy Center in Huntsville, Alabama, the applicable professional standards for such forensic evaluation.  Green directed Vaughan Eden to ignore all collateral information in disregard of the well-established Huntsville Model for evaluating children.

e.     Green allowed the mother, a person repeatedly found to lack credibility, to provide the forensic evaluator information about Plaintiff that Green knew to be false and highly prejudicial.  Vaughan-Eden accepted this one-sided information at the direction of Green and in violation of well-established protocols for evaluating children.  Green has

testified that she was aware of the falsity of some of the information the mother provided to Vaughan Eden at the outset of the child's evaluation.

f. Vaughan-Eden conducted grossly negligent evaluations of the child. Vaughan-Eden violated well-established forensic protocols. She failed to sufficiently document sessions. She failed to determine what the child meant by the ambiguous use of key words. She instructed the child to repeat an ambiguous "disclosure" of abuse to Green. She and Green abused and traumatized the barely four-year-old child by subjecting her to a nearly two-hour session in which they repeatedly pressured her to report abuse by her father.

g. Green provided the mother approximately 24 hours notice and opportunity to "coach" the child before she met with the child to obtain a "disclosure" of abuse from the four-year old – knowing that the mother was suspected of coaching by the court by prior professionals appointed to this matter.

h. Green intentionally violated state law and regulations in interviewing the child by failing to videotape or even audiotape the interview or to properly invoke and document an exception to electronic recordation. Electronic recording of interviews of children in investigations of abuse is required to protect alleged abusers, children, and the accuracy of disclosures. Green intentionally denied Plaintiff and the child this important protection. Audio or video-taping is also required by established child forensic protocols. The absence of any recording (audio or video) is a critical flaw in the process undertaken by the Department and its employees.

i. Defendant Department's employees refused to revise their abuse allegations against Plaintiff even after an informal panel of the Virginia Board of Social Work publicly reprimanded Vaughan-Eden for misconduct in this case.

j. Vaughan-Eden destroyed all original notes from her sessions with the child **after** receiving a subpoena for her records while the case was pending before the JDR Court, intentionally preventing Plaintiff and the state court from examining or assessing the sessions with the child. Vaughan-Eden also failed to record the sessions in violation of well-established professional standards.

k. Green destroyed all original notes from her session with the child and has admitted that this is a local policy of the ACDSS.

l. The Defendant Department's employees ignored numerous allegations, complaints and reports by several objective and professional sources of "coaching" and/or false allegations of abuse by the mother – all in an effort to prove abuse by the father to the exclusion of any other explanation. Green stated to one such professional that she would not investigate that professional's allegations of psychological harm or coaching by the mother because Green was only interested in pursuing allegations against Mr. Nelson.

m.      They failed to protect the child from numerous intrusive and traumatic medical examinations instigated by the obsessive mother.  The mother subjected the child to three physically intrusive medical examinations in an effort to prove sexual abuse by the father.  On one occasion, the mother took the child to the U.Va. Medical Center Emergency Room, and provided the medical personnel false information to convince them to conduct a Sexual Assault Nurse Examination ("SANE" exam).  The child was so traumatized by the intrusive physical examination of her private areas that she had to be physically held down on a gurney while screaming.  The SANE showed no indication of sexual abuse.  So concerned were the U.Va. medical professionals about the mother's conduct that they reported the mother to the Department for abuse of the child.  The Department ignored the report and refused to investigate the mother.  The numerous intrusive and traumatic medical evaluations of the child never produced any physical evidence of abuse of the child by Mr. Nelson.  But the traumatic evaluations were abusive by the mother.  The Department conveniently ignored this fact from 2004 to the present to rationalize their prosecution of Mr. Nelson.  Green has testified under oath that there was never any physical evidence of abuse regarding the child.

n.      They turned a blind eye to the mother's pathological shopping of the child from therapist to therapist as well as interference in the child's therapeutic relationships with court-appointed professionals whenever they did not support the Department's false accusations of abuse.

o.      After the JDR Court learned of the mother's repeated interferences with therapists, the JDR Court entered a Protective Order, dated November 1, 2005, enjoining any party from further interference with the child's therapists.  Department employees intentionally violated the JDR Court Protective Order by aiding and abetting the mother's efforts to disrupt the child's therapeutic relationship with Court-appointed therapist Emily Blankinship in or about January 2006.  After several therapeutic sessions with the child, Ms. Blankinship began to conclude that the child had not been abused by Mr. Nelson and she reported this conclusion to the mother. Seeing that the court-appointed therapist did not support the Department's findings and allegations, the mother surreptitiously audio taped conversations with Ms. Blankinship in an effort to discredit her and end the therapeutic relationship.  Green was aware of the taping and subsequent transcription of the telephone conversation.  Green warned the mother that she might be punished for her conduct, but concealed the mother's violation from the Court-appointed therapist and the JDR Court.  Thereafter, when the Court-appointed therapist resigned because of the surreptitious taping, the mother was investigated for contempt.  Green intervened to persuade prosecutors to overlook the mother's misconduct – even though termination of the therapeutic relationship directly harmed the child and further deprived Mr. Nelson from the benefit of Ms. Blankinship's professional opinion in his favor.

p.      From January 2006 until the present time, despite the Department's allegations that the child had been violently and sexually abused, Department employees completely and intentionally failed to provide the child any replacement therapy.  A competent therapist could have further supported and repaired Plaintiff's relationship with his child as well as his assertions of innocence.

q.      Department employees aided and abetted the mother's violation of the JDR Court's protective order requiring that the child remain at a designated daycare facility. The daycare facility director previously had reported the mother's harmful conduct to them, but they ignored the director, informed the mother of the director's concerns, and then helped the mother remove the child from the Court-ordered daycare facility.

r.      Department employees violated 22 VAC 40-705-110(B) by failing to conduct a "risk assessment" following their determination that the father was "founded." Such a "risk assessment" required, among other things, that they analyze all "evidence gathered during the investigation" and its "reliability and importance." They intentionally failed to perform this assessment.

s.      Notwithstanding copious evidence that the mother made false allegations of abuse, the Department and its employees ignored all evidence of misconduct by the mother and refused to investigate any such allegations. They refused on several occasions to meet with Mr. Nelson to consider evidence of his innocence or of the mother's misconduct. This occurred even after the Virginia Department of Social Services held that the Department's finding against Mr. Nelson was baseless. Yet, the Department and Herrick maintained a Petition against Mr. Nelson that alleged sexual abuse and Herrick objected to Mr. Nelson's presentation of evidence to prove his innocence before the Circuit Court and the Virginia Court of Appeals. After the Virginia Court of Appeals confirmed that Mr. Nelson had never been found to have abused his child and remanded the case for further consideration of the mother's conduct, Department employees again refused to meet with Mr. Nelson or to receive any information or evidence. Instead, the Department employees' private legal counsel responded to Mr. Nelson's formal report of abuse to the Department. The employees' private legal counsel threatened Mr. Nelson with an ethical violation for submitting a report of child abuse. Later, Herrick spoke up and claimed that he was acting as the decision maker for the Department and that he was making all further substantive decisions regarding Mr. Nelson's report of child abuse. In his new role as the Department decision maker, Herrick never conducted any investigation or family assessment into the child's abuse by her mother as required by state law. As the attorney who had pressed a Petition against Mr. Nelson, and who had worked closely with the mother's attorneys, Herrick operated under a patent conflict of interest.

t.      When Mr. Nelson attempted on several occasions to have his case referred to another jurisdiction's child protection agency, for an objective and neutral review of his case, Defendants and their agents blocked his attempts. Herrick inserted himself as the decision-maker for the Department in 2009, refused to meet with Mr. Nelson, coordinated a legal threat against Mr. Nelson in retaliation for contacting Department employees, and blocked Mr. Nelson from obtaining an investigation or assessment of abuse of his child which Mr. Nelson was entitled to under law.

u.     The Department and its employees ignored several professional analyses and reports supporting Plaintiff's innocence, including the favorable results of an Abel Assessment of Sexual Interest conducted by the Department's own expert, a professionally-administered lie detector test, and the assessments of several Court-appointed therapists who concluded the child had a very positive relationship with Plaintiff inconsistent with allegations of abuse.  Upon learning that Plaintiff had been administered and passed an Abel exam, Green contacted the expert who administered it to express her displeasure that he had administered the Abel exam to Plaintiff.

v.     Defendant Herrick presented false and misleading evidence in an attempt to prove that Mr. Nelson accessed alleged child pornography on a computer that had been in the mother's exclusive control for several years.  Mr. Nelson hired a computer forensic expert who determined that the pornographic material was placed on the computer by someone while accessing and replying to emails in the mother's password-protected personal email account.  Neither Herrick or other Department employees would meet with Mr. Nelson to receive and consider this evidence, nor would they revise their accusations against him, even though Herrick had presented perjured testimony in a state administrative proceeding as evidence that the Father was sexually deviant and was guilty of abuse.  Yet, when the Father presented forensic proof that the Mother had placed the pornographic material on the computer, Herrick no longer cared about the evidence, his submission of perjured testimony, or the best interests of the child implicated by such evidence and perjury.

w.     Notwithstanding the vindication of Plaintiff by the Virginia Department of Social Services and the complete absence of any court determination that he ever harmed his child, the Department, its employees, and Herrick, without any legal or factual basis or authority, steadfastly prohibited Mr. Nelson from seeing his child with no legal basis for doing so.

x.     On information and belief, Department employees destroyed public records (including internal and external communications) relevant to their investigation and enforcement in this case.  These documents would have further demonstrated Plaintiff's innocence.

y.     On information and belief, as recently as October 2009, the Department's chosen social worker in this case, Vaughan-Eden, continued to persecute Plaintiff by informing one or more newspaper reporters that Plaintiff abused his daughter and/or by causing other individuals to so state on her behalf.  One news reporter contacted Plaintiff and informed him that Vaughan-Eden had contacted him, revealed the identities of Plaintiff and his child, and informed him that Plaintiff had abused his child.  Within weeks of this incident, another news reporter contacted Plaintiff and informed him of the same information, but denied that Vaughan-Eden had personally contacted the reporter.

z.     Plaintiff repeatedly made written requests to the Department and its employees to meet with them as he obtained evidence of his innocence and of the mother's abuse of the child.  They repeatedly refused to meet with him.

aa.     Before any federal civil rights lawsuit was ever filed, Department employees admitted that they had a conflict but continuously refused to refer the matter to another local agency as required by Virginia law.  Instead, they and their agents took every action possible to stop Plaintiff from accessing any neutral and independent local agency for fear that such agency might drop the matter against Plaintiff or, worse yet, actually investigate the mother for wrongdoings against the child.

bb.     All tribunals that have reviewed this case have either affirmatively found Mr. Nelson to be completely innocent or have found the Department's evidence too tainted and unreliable to be the basis of any finding of abuse against Mr. Nelson.  The JDR Court, the Virginia Department of Social Services, and the Circuit Court of Albemarle County have found the mother's conduct to have been suspicious, "extreme," "vindictive," lacking all credibility.  Yet, in the life of this child, the Department has never once acted to protect her from the harm and risk of further harm clearly indicated by those official, formal findings.

## CAUSE(S) OF ACTION

### Count I
### Substantive Due Process/Deprivation of Liberty/42 U.S.C. § 1983
(Department & Herrick)

68.     The allegations in paragraphs 1 through 67 are incorporated by reference.

69.     Defendants, acting under color of state law, have violated Mr. Nelson's clearly established liberty interest, afforded by the Fourteenth Amendment to the United States Constitution, in his parental and familial relationship with his child by engaging in a prolonged pattern of intentional, arbitrary, egregious, and grossly negligent official conduct.

70.     The Department and Albemarle County employees responsible for the operation of the Department violated Mr. Nelson's rights pursuant to locally established policies and customs that did not conform with, or violated, state policies.

71.     Herrick is sued for his administrative acts on behalf of the Department, his misconduct in the administrative process, his acts to continue prohibiting Mr. Nelson

from seeing his child after July 2006, and his prosecutorial acts against Mr. Nelson without any legal or factual basis after July 2006.

72.     As a direct result of Defendants' misconduct, Mr. Nelson's child has been subjected to psychological traumas, Mr. Nelson was subjected to false findings of abuse, Mr. Nelson and his daughter were prohibited from seeing each other and maintaining a familial relationship at great emotional pain to both for over four years, and Mr. Nelson has been forced to endure the most unspeakable false allegations and stigmatization, and consequent legal expenses to prove his innocence against a wholly prejudicial governmental abuse of power that shocks the conscience.

**COUNT II**
**Procedural Due Process/42 U.S.C. § 1983**
(Department & Herrick)

73.     The allegations in paragraphs 1 thru 72 are incorporated by reference.

74.     The Department and Herrick personally denied Mr. Nelson his statutory procedural right to obtain an investigation and/or family assessment of the valid allegations of child abuse he lodged with the Department regarding the harmful conduct of his child's Mother.

75.     The Department and Herrick personally blocked Mr. Nelson from obtaining a referral of his allegations of child abuse to an independent, neutral sister agency in another locality, a procedural guarantee provided in state law and regulations.

76.     The Department and Herrick denied Mr. Nelson these procedural protections in an effort to protect the Mother from any objective scrutiny and to protect themselves from any objective scrutiny of their misconduct and mistakes.

77. The Department and Herrick failed to perform any risk assessment of the Father, a procedure required under state law and regulation.

78. The procedural violations proximately caused (a) Mr. Nelson to be the subject of a false finding of abuse by the Department, (b) Mr. Nelson to be separated from his child for over 4 and a half years, (c) severe pain and harm to Mr. Nelson's relationship with his child that continues to this day and will continue in the future.

## COUNT III
## Conspiracy Under 42 U.S.C. § 1983
(Herrick)

79. The allegations in paragraphs 1 thru 77 are incorporated by reference.

80. Defendant Herrick acted jointly in concert and/or acquiesced in the overt acts and conduct set forth in this Complaint by the Department, its employees and thus in furtherance of a conspiracy that resulted in deprivations of Plaintiff's constitutional rights.

81. Herrick also conspired with and/or acted in concernt with and/or acquiesced in the overt misconduct set for in this Complaint by the Mother and her attorney, in an effort to prolong the prosecution of Mr. Nelson and the prohibition against his right to spend time with his child and enjoy a normal relationship with her.

82. Defendant's conspiracy caused Plaintiff's constitutional deprivations.

## Count IV
## Malicious Prosecution
(Herrick)

83. The allegations in paragraphs 1 thru 81 are incorporated by reference.

84. Defendant Herrick initiated and continued legal process against Plaintiff based upon allegations of child abuse they knew to be false or unreliable, and thus not supported by probable cause.

85. Herrick is sued for his malicious prosecution of Mr. Nelson in the administrative process and for his prosecutorial acts against Mr. Nelson without any legal or factual basis after July 2006.

86. After July 14, 2006, when the Virginia Department of Social Services dismissed Defendants' finding of abuse, Defendant Herrick maintained legal process – including a petition and allegations of abuse against Plaintiff – that he knew to be false or unreliable and without probable cause. Defendant Herrick admitted that the Defendants' abuse allegation against Plaintiff was "disposed of by the Virginia Department of Social Services' decision" and that the Defendants were legally obligated to abandon their allegations against Plaintiff – yet Herrick refused to dismiss the petition and even opposed Plaintiff's proffers of evidence to rebut the petition in the Circuit Court and the Virginia Court of Appeals. Herrick also filed a brief in the Virginia Court of Appeals that opposed Mr. Nelson's attempt to lift the baseless protective order. Defendant Department's employee Lori Green has admitted that the Defendants had no basis for pressing legal process against Plaintiff for years prior to their dismissal from the state case – yet they continued to maintain their petition. Ultimately, Herrick's efforts to keep Mr. Nelson in a vice grip were thwarted in September 2009, after years of arduous legal process and tremendous expense, when the Circuit Court absolved Mr. Nelson of the allegations against him.

87.     Herrick's conduct was grossly negligent, malicious and shocks the conscience.

As a direct result of Defendant's misconduct, Mr. Nelson has been forced to endure the

most unspeakable false allegations, separation for over four years from his child, a lasting

impairment of his relationship with his child, a stigma that may never disappear, and

legal expenses to prove his innocence against a wholly excessive governmental use of

legal process.

## Count V
## Intentional Infliction of Emotional Distress
(Herrick)

88.     The allegations in paragraphs 1 thru 86 are incorporated by reference.

89.     Defendant Herrick falsely accused Plaintiff of sexually abusing his child,

intentionally and/or recklessly in bad faith through the conduct set forth in this

Complaint, and he knew or should have known that such a heinous allegation would

cause Plaintiff severe emotional pain.  Defendant Herrick's actions also intentionally

and/or recklessly caused Plaintiff to be prohibited from seeing his child at all times

(except for 3 hours per week) for many years, and he knew or should have known that

such a severe and prolonged separation would cause Plaintiff severe emotional pain.

90.     Falsely accusing an innocent person of sexually abusing his child is outrageous,

intolerable and offends generally accepted standards of decency and morality.  Engaging

in the conduct set forth in this Complaint to produce a false finding of abuse and then

refusing to revise court pleadings despite compelling reasons for doing so is outrageous,

intolerable and offends generally accepted standards of decency and morality.

Prohibiting a father from spending time with his child at all times (except 3 hours per

week) for many years without any basis for the prohibition or time restriction is

outrageous, intolerable and offends generally accepted standards of decency and morality.

91.     Herrick is sued for his administrative actions, his misconduct in the administrative process, his actions to continue prohibiting Mr. Nelson from seeing his child after July 2006, and for his prosecutorial actions taken without any factual or legal basis after July 2006.

92.     Defendant's misconduct set forth in this Complaint caused Plaintiff severe emotional distress.

93.     Plaintiff's emotional distress has been severe and prolonged, beginning in January 2005 and continuing to this day.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays for an Order:

a.      Awarding Plaintiff $8,000,000 in monetary damages.

b.      Awarding Plaintiff $4,000,000 in punitive damages.

c.      Awarding Plaintiff attorneys' fees, costs and expenses pursuant to 42 U.S.C. § 1988 and other provisions of law.

d.      Granting Plaintiff such other relief as the Court deems just and proper or as may be allowed by law.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,

JOHN T. NELSON

_____/s/_____
Thomas M. Wolf (Va. Bar 18234)
LeClairRyan, a Professional Corporation
951 East Byrd Street, 8th Floor
Richmond, Virginia 23219
(804) 916-7143 (Telephone)
(804) 916-7243 (Fax)

H. Robert Yates III (Va. Bar 35617)
Lee E. Goodman (Va. Bar 31695)
Gretchen A. Jackson (Va. Bar 73064)
LeClairRyan, a Professional Corporation
123 East Main Street, 8th Floor
Charlottesville, Virginia 22903
(434) 245-3445 (Telephone)
Date: June 14, 2011                    (434) 296-0905 (Fax)