# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

JOHN T. NELSON,

*Plaintiff,*

v.

ANDREW H. HERRICK, ALBEMARLE COUNTY
BOARD OF SOCIAL SERVICES, AND ALBEMARLE
COUNTY DEPARTMENT OF SOCIAL SERVICES,

*Defendants.*

CIVIL ACTION NO. 3:11–cv–00014

MEMORANDUM OPINION

JUDGE NORMAN K. MOON

Pending before the Court in this civil rights and state tort action are the Defendants'
separate Motions to Dismiss. Defendant Andrew H. Herrick filed a Motion to Dismiss pursuant
to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and Defendants Albemarle County
Board of Social Services and Albemarle County Department of Social Services[1] filed a Motion
to Dismiss pursuant to Rules 12(b)(1), 12(b)(2), 12(b)(4), and 12(b)(6) of the Federal Rules of
Civil Procedure. (docket nos. 13 and 15). On September 29, 2011, in Charlottesville, VA, the
Court conducted a hearing to consider Defendants' Motions to Dismiss and Plaintiff's Motion to
Consolidate Cases[2] (docket no. 21). For the reasons stated herein, I will GRANT the
Defendants' Motions to Dismiss, thereby MOOTING Plaintiff's Motion to Consolidate Cases.

---

[1] In his first Amended Complaint, Plaintiff had named "Albemarle County Board of Social Services/Albemarle
County Department of Social Services" as the governmental Defendants. (docket no. 5). Prior to ruling on the
instant Motions to Dismiss, I granted Plaintiff's second Motion to Amend Complaint (docket no. 47), and I proceed
to consider this case under the second amended caption, which names the two governmental Defendants separately.
[2] Plaintiff moved the Court to consolidate the instant case with the closely related *Nelson v. Green, et al.*, Civil
Action No: 3:06–cv–00070.

1

# I. BACKGROUND

This case arises out of a lengthy custody and visitation battle over Plaintiff's daughter, during which Defendants allegedly behaved with gross negligence and in bad faith, all in an effort to establish a false finding that Plaintiff had sexually abused his daughter. *See* 2d Am. Compl. 1–2. Plaintiff asserts that such actions violated his liberty interest in his relationship with his daughter. *Id.* Plaintiff filed a Second Amended Complaint (docket no. 47 attach. 1), alleging pursuant to 42 U.S.C. § 1983 that Defendants violated, under color of state law, rights secured to him by the United States Constitution. 2d Am. Compl. 1. Additionally, Plaintiff brought claims for torts arising under state law, asserting that this Court has proper jurisdiction pursuant to 28 U.S.C. § 1367(a), the supplemental jurisdiction statute. 2d Am. Compl. ¶ 35.

Briefly, the facts are alleged as follows. Plaintiff John T. Nelson[3] ("Nelson") is a resident of Nelson County, Virginia. 2d Am. Compl. ¶ 38. He has a young daughter, Sarah Nelson ("Sarah"), who was ten years old at the time of Plaintiff's filing. *Id.* Sarah resides with her mother in Charlottesville, VA, but Plaintiff shares joint legal custody of the child. *Id.* Plaintiff and Sarah's mother were once engaged, but the pair never married. Pl.'s Mem. in Opp'n 4. Plaintiff has been involved in Sarah's life since birth and has supported her financially at all times. 2d Am. Compl. ¶ 38. Plaintiff and Sarah's mother, however, battled through a bitter custody dispute, which eventually gave rise to the events behind the instant lawsuit. 2d Am. Compl. ¶ 44; Pl.'s Mem. in Opp'n 4. During the course of the custody battle, Sarah's mother accused Plaintiff of sexually abusing the child. 2d Am. Compl. 16–18.

---

[3] I previously granted Plaintiff's Motion to Proceed Under Pseudonyms. (docket no. 2). Accordingly, I refer to Plaintiff and his daughter by those pseudonyms.

Defendant Andrew H. Herrick ("Herrick") is an attorney in the Albemarle County Attorney's Office. 2d Am. Compl. ¶ 43. Herrick prosecuted Plaintiff for child abuse in state court and before the Virginia Department of Social Services. *Id.* Herrick also signed and maintained a petition alleging that Plaintiff had sexually abused Sarah. *Id.* The governmental Defendants, Albemarle County Board of Social Services ("ACBSS" or "Board") and Albemarle County Department of Social Services ("ACDSS" or "Department"), are allegedly responsible for the varied policies and customs that played a role in prohibiting Plaintiff from seeing his daughter. *See* 2d Am. Compl. ¶¶ 39–42, 68.

In February 2005, Herrick, acting on behalf of the Department, petitioned for a protective order against Plaintiff, pursuant to Va. Code § 16.1–253, based on alleged child abuse against Sarah. *Anonymous B v. Anonymous C*, 660 S.E.2d 307, 309 (Va. Ct. App. 2008).[4] Herrick based this petition on evidence provided by Viola Vaughan-Eden ("Vaughan-Eden"), a social worker from Newport News, VA. 2d Am. Compl. ¶ 46. Vaughan-Eden previously conducted therapy sessions with Sarah at the request of Sarah's mother, but in defiance of a custody order issued by the juvenile and domestic relations district court ("J & DR court"). *Id.* For purposes of this factual introduction, it is sufficient to note that Vaughan-Eden's report, which led to a protective order, recounted explicit sexual statements that the child made during her therapy sessions, and that, according to Vaughan-Eden, implicated Plaintiff as an abuser. *See Anonymous B*, 660 S.E.2d at 309.

---

[4] In their respective briefs, both parties cite this case—which involved Plaintiff and Sarah's mother—and a related 2011 opinion also involving both parents, *Anonymous C v. Anonymous B*, No. 2232–09–2, 2011 WL 65957 (Va. Ct. App. Jan. 11, 2011), to establish various undisputed procedural facts. Plaintiff and Sarah's mother have been involved in considerable litigation throughout the state courts, and the cited opinions refer to that litigation. I consider these opinions without converting the instant Motion into a motion for summary judgment. *See, e.g.*, *Witthohn v. Fed. Ins. Co.*, 164 Fed. App'x 395, 396 (4th Cir. 2006) ("[A] court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed.").

3

Herrick's petition for the protective order led to a hearing before the J & DR court on February 16, 2005. *Id.* The J & DR court concluded that Sarah had indeed been abused, but the court could not, and did not, determine which parent had abused the child. *Id.* at 310. Plaintiff alleged that Sarah's mother had abused Sarah by subjecting her to inappropriate testing and attempting to elicit false allegations of sexual abuse, while Sarah's mother alleged that Plaintiff had actually committed physical sexual abuse. *Id.* The J & DR court went on to hold two additional hearings on this matter—a March 15, 2005 adjudicatory hearing, and an April 22, 2005 dispositional hearing. *Id.* Both hearings rendered the same indeterminate conclusions and resulted in protective orders being issued against both parents. *Id.* Additional protective orders, containing similar terms, were entered on November 1, 2005 and May 3, 2006. *Id.* Despite these inconclusive adjudications regarding the identity of the abuser, Plaintiff asserts that the J & DR court did say with certainty that Vaughan-Eden's evidence was "tainted" and therefore insufficient to establish that Plaintiff abused his daughter. 2d Am. Compl. ¶ 56. Upon inspection, I note that while the J & DR court referred to "tainted evidence" generally, the court specifically noted that "Dr. Vaughan-Eden certainly appears to be credible and she certainly has the credentials." *Anonymous B*, 660 S.E.2d at 310 (quoting the J & DR court).

Notwithstanding the J & DR court's conclusion that the evidence was insufficient to establish that Plaintiff abused Sarah, the Department still pursued administrative action against Plaintiff. 2d Am. Compl. ¶ 57. This administrative action resulted in a Level 1 "founded" disposition against Plaintiff, which is the most serious finding that the Department can make against a parent. *Id.* This founded disposition barred Plaintiff from seeing his daughter at all times except for three hours of weekly visitation supervised by ACDSS employees. 2d Am. Compl. ¶ 65. In addition, the founded disposition stigmatized Plaintiff with respect to Sarah's

4

CASA advocates, her daycare provider, and her school. *Id.* Finally, it required that Plaintiff's name be placed on a central registry of abusers. *Id.*

In July 2006, a neutral hearing officer overturned the founded disposition after Plaintiff had appealed it to the State Department of Social Services ("State DSS"). 2d Am. Compl. ¶ 60. The hearing officer reasoned that Vaughan-Eden's evaluation was deeply flawed and unreliable due in part to inappropriate actions taken by the Defendants. 2d Am. Compl. ¶¶ 59–60. Furthermore, according to the hearing officer, the Defendants "did not even come close to proving [their] case by a preponderance of the evidence." 2d Am. Compl. ¶ 60. The hearing officer specifically pointed to the fact that Sarah's mother "lack[ed] credibility" and was "vindictive." 2d Am. Compl. ¶ 59.

Despite the State DSS's conclusions, Herrick and the Department refused to dismiss or revise their allegations of abuse in the Albemarle Circuit Court. 2d Am. Compl. ¶ 61. Plaintiff alleges that Herrick worked with Department employees to continue restricting Plaintiff to seeing his daughter only three hours a week under a supervised visitation schedule. 2d Am. Compl. ¶¶ 23, 65. Plaintiff also alleges that, even after the State DSS had overturned the founded disposition, Herrick worked with Sarah's mother and her attorney in a state court action to continue to enforce the Protective Order against Plaintiff. 2d Am. Compl. ¶ 23. Pursuant to that end, Herrick allegedly opposed Plaintiff's proffer of innocence in the state court action. *Id.* This opposition was successful, and when Plaintiff appealed, Herrick filed a brief to the Virginia Court of Appeals in opposition to Plaintiff's request to lift the protective order. *Id.* As a result of Herrick's activity, the ACDSS petition that Herrick brought in February 2005 remained in place until March 3, 2009. 2d Am. Compl. ¶¶ 23, 43.

5

Eventually, on September 16, 2009, the Albemarle Circuit Court held that Plaintiff was innocent and that he was the victim of an obsessive and unreasonable campaign by the child's mother to interfere with the father-child relationship.  2d Am. Compl. ¶ 29.  The court also held that the evidence of abuse manufactured by ACDSS so lacked fundamental indicia of reliability that it was not even admissible.[5]  *Id.*  After his favorable ruling in state court, Plaintiff asked the Department to appoint a neutral child protection agency to review his case.  2d Am. Compl. ¶ 21.  Herrick and the Department, however, blocked this request.  *Id.*

Plaintiff alleges that on February 19, 2009, the Department—through Herrick—admitted that the Department had no basis for disputing Plaintiff's innocence since July 2006, when the State DSS hearing officer overturned the founded disposition.  2d Am. Compl. ¶ 64.  Based on these facts, Plaintiff's Complaint asserts five causes of action against the Defendants.  Under Count I, Plaintiff sues each Defendant under 42 U.S.C. § 1983, alleging a violation of his Fourteenth Amendment substantive due process rights and liberty interest in familial privacy with his daughter.  2d Am. Compl. ¶¶ 70–74.  In Count II, again pursuant to § 1983, Plaintiff claims that the Defendants denied him his procedural due process rights by refusing to investigate his child abuse claims against Sarah's mother, and by refusing to refer his allegations to a neutral agency.  2d Am. Compl. ¶¶ 75–81.  Counts III through V proceed only against Herrick.  Under Count III, Plaintiff claims, pursuant to § 1983, that Herrick conspired with Department employees and Sarah's mother to deprive Plaintiff of constitutional rights and prolong Plaintiff's prosecution.  2d Am. Compl. ¶¶ 82–85.  Count IV alleges malicious prosecution.  2d Am. Compl. ¶¶ 86–90.  Finally, Count V alleges intentional infliction of

---

[5] Sarah's mother appealed the ruling to the Virginia Court of Appeals, which affirmed and remanded with instructions for the circuit court to make more particularized evidentiary findings.  *Anonymous C*, at *16.

emotional distress. 2d Am. Compl. ¶¶ 91–96. Plaintiff seeks $8,000,000 in monetary damages, plus $4,000,000 in punitive damages, plus attorney's fees, costs, and expenses pursuant to 42 U.S.C. § 1988. 2d Am. Compl. 36. The Defendants move to dismiss all claims.

## II. APPLICABLE LAW

In parts relevant to the instant Motions, Rule 12(b) of the Federal Rules of Civil Procedure allows a court to dismiss a cause of action for: (1) lack of subject-matter jurisdiction or (6) failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b). A court considering dismissal under Rule 12(b)(6) must take the facts in the light most favorable to the plaintiff. *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir. 1991). Courts are not, however, "bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949–50 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)). Rather, to survive a motion to dismiss, a complaint must contain enough factual allegations to "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570. In evaluating "plausibility," the court may not rely on mere "labels and conclusions" or a plaintiff's "formulaic recitation of a cause of the elements of a cause of action . . . ." *Id.* at 555. Instead, the factual allegations must be enough to raise "a right to relief above the speculative level . . . ." *Id.* Thus, a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.

## III. DISCUSSION

### A. Herrick's Motion to Dismiss

Herrick asserts three grounds for dismissal. First, Herrick asserts that he is entitled to absolute immunity under the common law doctrine of prosecutorial immunity. Second, Herrick

7

asserts that Plaintiff's claims are barred by the statute of limitations. Finally, Herrick argues that Plaintiff does not have a valid cause of action under § 1983 or state law because: (1) Plaintiff does not assert a viable liberty interest claim; (2) Plaintiff does not have a valid procedural due process claim; (3) Plaintiff cannot establish a conspiracy claim; (4) Herrick is entitled to qualified immunity; (5) Plaintiff does not have a valid malicious prosecution claim; and (6) Plaintiff does not have a valid claim for intentional infliction of emotional distress. Because I find that Herrick is entitled to absolute immunity, I need not discuss his other defenses.

As a preliminary matter, Herrick was an attorney in the Albemarle County Attorney's Office at all times relevant to this case. As such, Herrick protests that his actions are protected under the common law doctrine of absolute prosecutorial immunity. Plaintiff presents two counterarguments. First, while Plaintiff concedes that common law prosecutorial immunity offers absolute immunity to actions that are *prosecutorial* in nature, Plaintiff argues that certain actions Herrick took were *administrative* or *investigative* in nature, and are therefore not protected. Second, Plaintiff argues that some of Herrick's actions were based on evidence that Herrick knew to be false and misleading, and Herrick's actions were therefore *ultra vires* and not the proper subject of prosecutorial immunity.

In *Imbler v. Pachtman*, 424 U.S. 409 (1976), the Supreme Court of the United States considered the § 1983 liability of a state prosecuting officer. The Court instructed that "[t]he common-law immunity of a prosecutor is based upon the same considerations that underlie the common-law immunities of judges[,] . . . includ[ing] concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties . . . ." *Id.* at 423–24. The Court acknowledged that "this immunity does leave the genuinely wronged [prosecuted party] without civil redress against a prosecutor whose malicious or dishonest action

8

deprives him of liberty." *Id.* at 427. Nonetheless, the Court concluded that the public policy considerations underlying the common-law rule "likewise countenance absolute immunity under § 1983." *Id.* at 424. At bottom, the Court deemed the alternative of qualifying a prosecutor's immunity to be a disservice to the broader public interest. *Id.* The United States Court of Appeals for the Fourth Circuit has extended absolute prosecutorial immunity to "[a]n attorney for the state who represents DSS in a proceeding involving the alleged abuse and neglect of a child . . . ." *Shirley v. Drake*, No. 98–1750, 1999 WL 202671, at *2 (4th Cir. 1999). *See also Vosburg v. Dep't of Soc. Servs.*, 884 F.2d 133, 138 (4th Cir. 1989) (holding social workers absolutely immune from any liability stemming from their decisions to file custody removal petitions).

The United States Supreme Court has also had occasion to consider the *breadth* of prosecutorial immunity, i.e., which actions taken by a prosecutor deserve absolute immunity, and which do not. The Court has made it clear that whether absolute immunity attaches to a particular action depends on "the nature of the function performed, not the identity of the actor who performed it." *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997) (quoting *Forrester v. White*, 484 U.S. 219, 229 (1988)). When it comes to applying this "functional" test, prosecutorial actions that are "intimately associated with the judicial . . . process" are absolutely immune. *Van de Kamp v. Goldstein*, 129 S. Ct. 855, 860 (2009) (quoting *Imbler*, 424 U.S. at 430)).

In undertaking this functional analysis, the Supreme Court has held that a prosecutor preparing to initiate a judicial proceeding by appearing before a judge and presenting evidence in support of a motion for a search warrant is absolutely immune. *Burns v. Reed*, 500 U.S. 478, 491 (1991). Moreover, "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, which occur in the course of his role as an advocate for the State" are

9

similarly entitled to immunity. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). On the other hand, absolute immunity does not apply to a prosecutor giving advice to police during a criminal investigation, *see Burns*, 500 U.S. at 496, or a prosecutor making statements to the press, *Buckley*, 509 U.S. at 277, or a prosecutor acting as a complaining witness in support of a warrant application, *Kalina*, 522 U.S. at 132.

I first note that *Shirley* and similar cases make it clear that Herrick, while not a "prosecutor" in the traditional sense, is nonetheless at least *eligible* for absolute prosecutorial immunity for certain actions taken while representing ACBSS, ACDSS, or both, in the allegations of abuse. Plaintiff does not contest this point, arguing instead that certain actions Herrick took were either non-prosecutorial or *ultra vires* and therefore not protected. The Court's task is to determine whether any of Herrick's actions indeed pulled him out from behind the shield of absolute immunity, as Plaintiff alleges. Whether Herrick is due absolute immunity from suit depends on the function he was serving in undertaking the various actions over which Plaintiff now sues. I reiterate that when absolute immunity applies, it is absolute. The fact that Plaintiff has alleged egregious and life-altering harms do not change the fact that, by law, if Herrick was at all times serving in a prosecutorial capacity, Plaintiff can be afforded no relief.

In his Memorandum in Opposition to Herrick's Motion to Dismiss, Plaintiff argues that many of the allegations contained in his Amended Complaint relate to "investigative and administrative tasks." Plaintiff claims that Herrick botched the investigation of Nelson, willfully refused to investigate the mother's misconduct, based the claims against Nelson on an unreliable evaluation, and either knew that the child's statements were false, or acted in reckless disregard for their truth or falsity. 2d Am. Compl. 17–19; Mem. in Opp'n 21. Plaintiff deems these activities "investigative" and therefore not protected by the doctrine of absolute immunity.

Moreover, Plaintiff asserts that once the State DSS reversed the level-1 founded disposition, Herrick's continued participation in the proceedings was "*ultra vires*, without any color of authority." Pl.'s Mem. in Opp'n, at 22.

I disagree. Having considered the arguments set forth in the parties' briefings, as well as those offered at the September 29 hearing, I find that all of Herrick's activities relevant to this matter were within the nexus of prosecutorial activity, and were furthermore within the scope of Herrick's authority, and are therefore protected by the doctrine of absolute immunity.

First, I am unpersuaded by Plaintiff's arguments that certain actions Herrick took were administrative or investigative. A review of Plaintiff's Second Amended Complaint is telling. Therein, Plaintiff alleges that "Herrick presented this false, biased, tainted and unprofessional evidence to courts and to administrative bodies . . . ." (2d Am. Compl. ¶ 2); "Herrick . . . continued to litigate against the Father . . . ." (2d Am. Compl. ¶ 4); "[w]orked with the culprit, the Mother, and her attorney to facilitate their malicious *prosecution* . . . ." (2d Am. Compl. ¶ 23(b)) (emphasis added); "maintained false allegations . . ." (2d Am. Compl. ¶ 23(c)); "[i]ntroduced evidence in the Circuit Court . . ." (2d Am. Compl. ¶ 23(d)); "[o]pposed the Father's proffer of evidence . . . in the state court . . ." (2d Am. Compl. ¶ 23(e)); "[o]pposed the Father's appeal from the Virginia Circuit Court . . . " (2d Am. Compl. ¶ 23(f)); and so forth. These allegations arise quite clearly out of prosecutorial behavior. Plaintiff's conclusory statement that certain activities, like Herrick's role in pursuing a "founded" disposition in agency proceedings was administrative, and not prosecutorial, does not withstand scrutiny, given Supreme Court precedent extending absolute immunity to a prosecutor's actions in merely preparing to initiate a judicial proceeding. *See Burns*, 500 U.S. at 486; *Buckley*, 509 U.S. at 273 ("Those acts [entitled to absolute prosecutorial immunity] must include the professional

11

evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial . . . .").  I also note that the Supreme Court has even held that prosecutors involved in the supervision or training or information-system management enjoy absolute immunity, despite the fact that those actions could be fairly characterized as "administrative." *Van de Kamp*, 129 S. Ct. at 862.  The Court reasoned that such actions, despite perhaps being administrative, are each "of a kind that itself is directly connected with the conduct of a trial." *Id.*  In accordance with the foregoing precedent, I find that none of Herrick's actions strayed far enough, if at all, from the nexus of the "prosecutorial" to justify the stripping away of absolute immunity.

Turning next to Plaintiff's "*ultra vires*" argument, Plaintiff conclusorily asserts that Herrick's prosecutorial authority evaporated in July of 2006 when the State DSS determined that the abuse charges were warrantless.  Plaintiff cites *Snell v. Tunnell*, 920 F.2d 673 (10th Cir. 1990) for the proposition that actions that are beyond the scope of a government attorney's authority are not protected by absolute immunity.  *Snell* is, of course, not binding precedent in the Fourth Circuit.  Moreover, unlike the plaintiffs in *Snell*, Nelson has pointed to no statutory scheme that conclusively withdrew Herrick's authority to remain involved in the case once the State DSS had ruled.  The only truly relevant part of the holding in *Snell*—which withdrew absolute immunity from the Assistant General Counsel of the Oklahoma Department of Human Services—is quite narrowly based on the court's application of statutes vesting the authority for obtaining a "pick-up order" in the police or the district attorney, and not DHS.  *Id.* at 695. Plaintiff has not persuasively argued that any similar scheme—or any other considerations—

Case 3:11-cv-00014-NKM-BWC   Document 52   Filed 10/26/11   Page 12 of 21   Pageid#: 663

withdrew Herrick's authority in the instant matter.[6]  At the September 29 hearing, Plaintiff's counsel cited *Van de Kamp*, 129 S. Ct. 855, for the proposition that once Herrick knew that the allegations were false, he forfeited absolute immunity.  I cannot agree with counsel's analysis. Even accepting, for the sake of argument, that Herrick "knew" that the allegations were false after the State DSS determined that the abuse charges were warrantless, Herrick retained absolute prosecutorial immunity to the extent that his actions were, in fact, prosecutorial.  His mindset, including what Plaintiff alleges that Herrick knew[7] about the validity of Sarah's mother's allegations, does not bear on the immunity question.

I recognize that absolute immunity is "strong medicine . . . ."  *Forrester*, 484 U.S. at 230 (1988) (Blackmun, J., concurring (quoting Posner, J., dissenting below)).  The doctrine no doubt prevents some truly aggrieved plaintiffs from recovery.  Nevertheless, Plaintiff's arguments that Herrick's activities are not protected by the doctrine of absolute prosecutorial immunity ring hollow; Herrick is absolutely immune, and I will dismiss all of Plaintiff's claims against him.

### B.  Albemarle County Board of Social Services and
### Albemarle County Department of Social Services' Motion to Dismiss

Albemarle County Board of Social Services and Albemarle County Department of Social Services assert the following bases for dismissal: first, ACBSS and ACDSS are entitled to sovereign immunity under the Eleventh Amendment to the Constitution of the United States;

---

[6] As I note in Part III.B., the Commonwealth of Virginia, by statute, retains significant control over local departments and boards of social services.  Indeed, in Part III.B., I find that such control is significant enough to afford ACBSS and ACDSS "arm of the state" status for purposes of sovereign immunity.  Nevertheless, I find the statutory authority at issue in the instant case to be distinguishable from that in *Snell*, in that here, unlike in *Snell*, no statute or directive specifically withdrew Herrick's authority to proceed after the State DSS had issued its ruling.

[7] As I indicated at the hearing, I am not persuaded that the State DSS's 2006 reversal should have convinced Herrick—who had been involved in the case for some years by that time—that the mother's abuse allegations were definitively baseless.  I do not intend to weigh in on who was right or wrong at the time; that issue is decidedly not before the Court.  Rather, I simply note that the prior litigation between Plaintiff and Sarah's mother had produced, and would continue to produce, inconclusive abuse findings over several years.  It is true that the State DSS's 2006 finding probably should have given Herrick, or any prosecutor, some pause.  The finding did not, however, immediately cause Herrick's prosecutorial authority to evaporate, as Plaintiff asserts.

13

second, Count I fails to state a claim for a substantive due process liberty interest violation; third,

Count II fails to state a claim for a Fourteenth Amendment procedural due process violation; and

fourth, Counts I and II are barred by the applicable statute of limitations.[8]  Because I find that

ACBSS and ACDSS are immune from suit under the doctrine of sovereign immunity, I need not

consider Defendant's other contentions.

ACBSS and ACDSS argue that they are protected by the doctrine of sovereign immunity

under the Eleventh Amendment because they are each an "arm of the state" of Virginia.  Plaintiff

contends, to the contrary, that neither ACBSS nor ACDSS is entitled to dismissal on the basis of

sovereign immunity, because both are "local" governmental entities.

The Eleventh Amendment reflects the common law concept of state sovereign immunity

and declares that "[t]he Judicial power of the United States shall not be construed to extend to

any suit in law or equity, commenced or prosecuted against one of the United States by Citizens

of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  The

Supreme Court of the United States has "consistently held that an unconsenting State is immune

from suits brought in federal courts by her own citizens as well as by citizens of another State."

*Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974).

The Eleventh Amendment is not limited to states as such, but also applies to an agency

that acts as an "arm of the state."  *Cash v. Granville Cnty. Bd. of Educ.*, 242 F.3d 219 (4th Cir.

2001).  Moreover, a state entity need not be the named party in an action for the suit to be barred

by the Eleventh Amendment.  *Id.*  Even if individual officers are named as defendants in

---

[8] The governmental Defendants had also argued, in their brief and at the hearing, that "Albemarle County Board of Social Services/Albemarle County Director of Social Services," as named in Plaintiff's first Amended Complaint, is not an entity under Virginia law, and Plaintiff's claims should therefore be dismissed.  Because I have granted Plaintiff's second Motion to Amend, however, this argument is moot.

14

accordance with *Ex parte Young*, 209 U.S. 123 (1908) (allowing suits for injunctive relief to proceed in federal court against a state *officer*), the state may invoke sovereign immunity if the action is essentially seeking the recovery of money from the state treasury. *Cash*, 242 F.3d 219 (citing *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459 (1945)).

On the other hand, as distinct from states or arms of the state, "[l]ocal governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief . . . . [if the] action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). In summation, state sovereign immunity under the Eleventh Amendment depends on the proper classification of the defendant's "character." *Cash*, 242 F.3d at 222. Courts should consider state law in defining a particular defendant's character, but no bright line can be drawn separating state agents and instrumentalities, which are afforded Eleventh Amendment immunity protection, from local governmental entities, which are not. *Id.* at 222–23. The burden of proof is on the entity claiming that it is an "arm of the state." *Christy v. Pa. Tpk. Comm'n*, 54 F.3d 1140, 1144 (3d Cir. 1995); *Beardsley v. Webb*, 30 F.3d 524, 31–32 (4th Cir. 1994); *ITSI T.V. Prods., Inc. v. Agric. Ass'ns*, 3 F.3d 1289, 91 (9th Cir. 1993).

The United States Court of Appeals for the Fourth Circuit, in *Cash*, described certain factors that a district court should consider when deciding the sovereign immunity question. The principal factor is "whether a judgment against the governmental entity would have to be paid from the State's treasury." *Cash*, 242 F.3d at 223. *See Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425 (1997); *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 39 (1994); *Harter v. Vernon*, 101 F.3d 334, 338 (4th Cir. 1996). Indeed, if the state treasury is found to be

15

responsible for paying the judgment, then that factor disposes of the inquiry; the entity is entitled to sovereign immunity, and other factors need not be considered. *Hess*, 513 U.S. at 50.

A negative finding on the question of whether the state treasury would pay a judgment, however, does not complete the inquiry. *Cash*, 242 F.3d at 224. The Fourth Circuit has outlined three additional factors, which together can be said to describe a "sovereign dignity" test: (1) the degree of control the State has over the entity, i.e., the degree of autonomy the entity enjoys from the State; (2) the scope of the entity's concerns, i.e., whether those concerns are local or state-wide; and (3) the way in which State law treats the entity. *Id.* (citing *Harter*, 101 F.3d at 337 and *Ram Ditta v. Md. Nat'l Park & Planning Comm'n*, 822 F.2d 456, 457 (4th Cir. 1987)). After analyzing these factors, a court can determine whether a judgment against the entity at issue would "affect the dignity of the State as a sovereign and as one of the United States." *Cash*, 242 F.3d at 224. The point of asking this set of questions is to determine whether, under state law, the entity functions "more like a county or municipality [which should not be afforded immunity] than like an arm of State itself [which should be]." *Id.*

The Fourth Circuit Court of Appeals and numerous district courts herein have had the opportunity to apply the "sovereign dignity" test outlined above. The Fourth Circuit has upheld a district court's ruling that the Prince George's County (Maryland) Department of Social Services is entitled to sovereign immunity where the Department had submitted affidavits setting forth financial and administrative information about itself, and the plaintiff proffered no contradictory evidence. *Keller v. Prince George's Cnty.*, 923 F.2d 30, 32 (4th Cir. 1991).

Federal courts in both the Eastern and Western Districts of Virginia have also considered the issue. In *Doe v. Mullins*, No. 2:10CV00017, 2010 WL 295035 (W.D. Va. July 22, 2010), Judge Jones concluded that the Wise County (Virginia) Department of Social Services (WCDSS)

16

was entitled to sovereign immunity. Citing the fact that "[s]tate law requires local departments of social services to perform their child welfare services subject to the direction of the State Commissioner of Social Services and in accord with regulations adopted by the State Board of Social Services," Judge Jones determined that the Commonwealth controlled the County Department to a high enough degree to deem WCDSS an "arm of the state, at least in its role of protecting children." *Id.* at *1. The late Senior Judge Williams reached a similar conclusion with respect to the Hanover County (Virginia) Board of Social Services and the Hanover County Department of Social Services in *Daley v. Ferguson*, No. 3:95CV304, 1995 WL 17955326, at *3 (E.D. Va. June 26, 1995), finding that both entities were "'arms of the state' that are shielded by sovereign immunity under the Eleventh Amendment."

In *Hines v. Spartanburg Cnty. Dept. of Soc. Servs.*, C/A No. 7:07–33375–GRA–WMC, 2009 WL 237837, at *5 (D.S.C. Jan. 30, 2009), the court found that defendant Spartanburg County (South Carolina) Department of Social Services was immune from suit pursuant to Eleventh Amendment sovereign immunity, and granted it summary judgment. The court noted that the Spartanburg County Department was "one of the county offices of [the South Carolina State Department of Social Services]." *Id.* at *6. The District of South Carolina reached the same conclusion at the motion to dismiss stage in *Jeter v. Harris*, C/A No. 0:07–00857–GRA–BM, 2007 WL 1795788, at *2 (D.S.C. June 19, 2007) (dismissing the case against the Lexington County (South Carolina) Department of Social Services).

In *Shell v. Wall*, 808 F. Supp. 481, 483–85 (W.D.N.C. 1992), the court determined that the Iredell County (North Carolina) Department of Social Services was an arm of the state due to "the characterization of the Department under state law, the relative extent of state control over the Department, the relative extent to which the Department depends on state funding, and the

17

effect of a potential damage award on the state treasury . . . ." The court in *Shell* remanded the claims to state court instead of dismissing them because the Defendants removed the matter to federal court after the plaintiff originally brought the action in state court. *Id.* at 484.

Not all district courts in the Fourth Circuit, however, have been eager to shield departments and boards of social services from suit under 42 U.S.C. § 1983. *See Rivera v. Guilford Cnty.*, 286 F. Supp. 2d 635, 638 (M.D.N.C. 2003) (requiring further briefing on the extent to which the defendant Guilford County (North Carolina) Department of Social Services depended on state funding and the payer of a potential award of damages before ruling on the immunity question); *Meares v. Brunswick Cnty., N.C.*, 615 F. Supp. 14 (E.D.N.C. 1985) ("Because the Brunswick County [North Carolina] Department of Social Services and the Brunswick County Board of Social Services are extensions of Brunswick County which does not enjoy sovereign immunity, neither do they have sovereign immunity."). These few negative immunity holdings, however, are greatly outweighed by the affirmative holdings in Fourth Circuit district courts. Moreover, I find it significant that the cases considering whether a *Virginia* county department or board of social services is protected by sovereign immunity have answered the question in the affirmative. Plaintiff is eager to describe opinions that found no immunity—e.g., no immunity for a local sheriff (*Harter*), no immunity for the Maryland National Capital Park and Planning Commission (*Ram Ditta*), and no immunity for a local school board (*Cash*)—but Plaintiff has failed to persuasively distinguish the instant matter from those cases where courts found that other counties' *boards and directors of social services* were entitled to immunity. Plaintiff simply asserts that *Mullins* and *Daley* misapplied, or failed to apply, the relevant factors, and I do not agree.

18

In considering the factors of the "sovereign dignity" test as set forth in *Cash* and its predecessors, and after carefully examining Fourth Circuit precedent on this issue, I find that the Albemarle County Department of Social Services and the Albemarle County Board of Social Services are both entitled to sovereign immunity. Even accepting Plaintiff's assertion that the Commonwealth's treasury would not directly pay a judgment against ACBSS or ACDSS, I still find that ACBSS and ACDSS are arms of the state. First, "[u]nder Virginia law, the supervision of local social services departments is entrusted to the Commissioner of Social Services and the State Board of Social Services." *Wolf v. Fauquier Cnty. Bd. of Supervisors*, 555 F.3d 311, 321 (4th Cir. 2009). Counties and cities, then, appoint the members of their local social services boards from a list of eligible candidates provided by the Commissioner; the local boards, in turn, appoint local directors of social services. *Id.* (citing Va. Code § 63.2–325). The local boards report to the Commissioner and to the Virginia Board of Social Services, not to the counties. *Wolf*, 555 F.3d at 322. Although the Fourth Circuit in *Wolf* did not decide whether the Fauquier County Social Services Board was, in fact, entitled to sovereign immunity as an arm of the Virginia (because the issue was not before the court), I find that its discussion, as well as the discussions set forth by other Virginia district courts, is instructive.

Additionally, another recent Fourth Circuit precedent—that Plaintiff quotes at length in his Memorandum in Opposition—*Fields v. Prater*, 556 F.3d 381 (4th Cir. 2009), actually *weighs in favor* of my finding for ACBSS and ACDSS on the sovereign immunity question. At the risk of belaboring the points I have already made, I do find it helpful to recount a relevant portion of *Fields*, which outlines Virginia's general scheme for administering social services. Therein, Judge Wilkinson noted that "[a]t the state level, the Governor appoints the Commissioner of Social Services as well as the nine members of the State Board of Social Services . . . ." *Id.* at

383. Moreover, "the Commissioner supervises the administration of social services throughout the state." *Id.* "The State Board advises the Commissioner, but also has the power to pass regulations which are binding throughout the state and which the Commissioner must enforce." *Id.* Local boards administer social services at the local level, but do so "[s]ubject to the supervision of the Commissioner and in accordance with the regulations passed by the State Board . . . ." *Id.* Finally, when it comes to local directors, they are "agents of the Commissioner . . . [and l]ocal directors who do not meet personnel standards established by the State Board can be removed by the Commissioner." *Id.* The foregoing scheme is set forth entirely by the Virginia Code. *See id.* (citing Va. Code §§ 63.2–201, 203, 215–17, 313, 324, 326–27, 332–33).

In considering the degree of state control prescribed in the foregoing discussion, as well as the Virginia Code's treatment of social services organizations, I hold that ACBSS and ACDSS are both arms of the Commonwealth of Virginia, at least when it comes to their role in protecting children, and they are therefore shielded from suit by sovereign immunity. Although "the [Supreme] Court has sent conflicting signals on the nature of the sovereign immunity defense," 13 Charles Alan Wright et al., *Federal Practice & Procedure* § 3524.1 (3d ed. 2011), for purposes of the instant Motion, the "Eleventh Amendment defense sufficiently partakes of the nature of a jurisdictional bar . . . ." *Edelman v. Jordan*, 415 U.S. at 678. Accordingly, I will dismiss all claims against the governmental Defendants.

## IV. CONCLUSION

I am unpersuaded that Defendant Herrick's actions can be called anything other than "prosecutorial," and I therefore find that Defendant Herrick is absolutely immune from suit. Moreover, I find that the Albemarle County Board of Social Services and the Albemarle County Department of Social Services are also shielded from suit under the doctrine of state sovereign

20

immunity, as it has been held to proceed from the Eleventh Amendment. Therefore, Defendants'

Motions to Dismiss are GRANTED. Plaintiff's Motion to Consolidate Cases (docket no 21) is

therefore DENIED AS MOOT, and the case is DISMISSED from the active docket of the Court.

The Clerk of the Court is directed to send a certified copy of this Memorandum Opinion

and the accompanying Order to all counsel of record.

It is so ORDERED.

Entered this  26th  day of October, 2011.


NORMAN K. MOON
UNITED STATES DISTRICT JUDGE